LINCOLN RESERVE LIFE INSURANCE COMPANY *v.* SMITH.

Opinion delivered May 6, 1918.

1. INSURANCE—STATEMENTS IN APPLICATION—REPRESENTATIONS.— The statements in an application for life insurance held to be representations, and a misstatement would not avoid the policy unless wilfully made.

2. INSURANCE—MISREPRESENTATION AS TO AGE BY APPLICANT.—An innocent misstatement by an applicant for life insurance as to his age will not avoid the policy when not wilfully made.

3.  INSURANCE—AMBIGUOUS STATEMENTS IN POLICY.—Ambiguous statements in a policy of life insurance will be resolved against the insurance company. ·

4.  INSURANCE—MISSTATEMENT AS TO AGE—AMOUNT OF INSURANCE RECOVERABLE.—Where an insured made an innocent misstatement in his application as to his age, the beneficiary may recover the full face of the policy, in the absence of a showing as to what insurance could be purchased at the correct age, with the premium actually paid in.

5.  INSURANCE—RIGHTS OF BENEFICIARY—PROOF OF DECLARATIONS OF INSURED.—A policy of life insurance constitutes a contract between the insurer and the beneficiary, either under assignment, or under the original designation in the policy itself, and it is not competent to prove, as against the interest of the beneficiary, the declarations of the insured.

Appeal from Faulkner Circuit Court; *Thomas C. Trimble,* Judge; affirmed.

*J. C. & Wm. J. Clark* and *Stallings & Drennen,* for appellant.

1.    The policy was void for misstatements and untrue answers which were warranties. The rate book was admissible in evidence. The age of appellee was misstated, and no recovery could be had. 64 Am. Dec. 529; 61 N. Y. 571; 25 Cyc. 740, note 43; 117 Wis. 24; 25 Cyc. 741 (f), 742 (4), 904 (A), 919 (L), 808 (D), etc.; 77 Ala. 210; 93 N. W. 800; 64 N. H. 241; 119 Iowa, 263; 72 *Id.* 232; 93 N. W. 662, 277; 9 Atl. 113; 25 S. W. 835.

2.    It was error to allow the penalty and attorney's fee. 72 Ark. 378, etc.

3.    It was permissible for defendant to show that deceased had stated to his wife and others that he was suffering from serious disease. 16 Cyc. 639-40 B; 94 Va. 146; 36 L. R. A. 271.

4.    By the express terms of the policy and application, the taking effect of the policy depended upon the *actual* and not the apparent good health of the insured. 25 Cyc. 720 (note 30), 810 (7); 167 Mass. 79; 101 N. W. 900.

5.    The evidence was not sufficient. 87 Ala. 277.

6. Each juror must be reasonably satisfied that plaintiff was entitled to recover. 171 Ala. 291; 54 So. 619.

7. This court will reverse where the verdict is not sustained by the evidence or is in disregard of the instructions. 44 Ark. 259; 49 *Id.* 381; 117 *Id.* 483; 5 S. W. 782.

8. The insured must act in good faith. He can not recover if there is collusion with the agent. 25 Cyc. 803, note 62; 121 Ala. 138; 26 So. 19; 77 Am. St. 34.

9. There was error in the instructions. Cases *supra.* The insured was in ill health, misstated his age and made untruthful answers to questions asked him. These were warranties, if not *material* representations.

*Robins & Clark,* for appellee.

1. The rate book was properly excluded. The question of misstatement of age was submitted to the jury on proper instructions and their verdict is conclusive.

2. The penalty and attorney's fee were properly allowed. The verdict is not excessive.

3. There was no error in admitting the testimony of Nannie Jones and Arthur Dunn. 87 Ark. 52; 88 *Id.* 562; 91 *Id.* 65; 97 *Id.* 564; K. & C. Dig., § 3406; 1 Greenleaf, Ev. (16 ed.), 393; Wigmore on Ev., § 2336; 186 S. W. 95; L. R. A. 1916 F, 382; 61 So. 737; 165 U. S. 343.

4. Testimony as to the "outward appearance" of Jones was admissible. 95 Ark. 310; 118 *Id.* 569.

5. There is no error in the instructions. 43 Atl. 341; 111 Ark. 554; 89 *Id.* 230; 105 *Id.* 101; 56 L. R. A. 43 and cases *supra.*

McCULLOCH, C. J. This is an action on a life insurance policy issued by the defendant company to Langston S. Jones, a negro citizen of Faulkner County, Arkansas, payable to his own order, and subsequently assigned to the plaintiff, S. G. Smith, as creditor. The amount of the policy was $1,000, and plaintiff's debt against Jones exceeded that amount, and he sues, therefore, to recover the full amount of the policy.

The written application for the policy was made to the company on September 25, 1916, and the policy was issued on October 14, 1916, and delivered immediately thereafter, and on October 26, 1916, by endorsement on the back of the policy, duly approved by the company, the policy was assigned to plaintiff Smith. Jones died on December 21, 1916, and after proof of loss being made the company refused to pay on the ground that there was a breach of conditions in the policy concerning the truthfulness of the answers in the application, and on other grounds to be referred to in the opinion.

The trial of the case in the court below resulted in a verdict in favor of the plaintiff for recovery of the full amount of the policy, with attorney's fees and statutory damages, and the defendant has appealed. The assignments of error are very numerous, and it is believed that a general statement of the grounds on which liability of the company rests will dispose of many of the defenses without discussing the assignments of error in detail.

(1)    The initial question in the case is whether or not the statements contained in the application were warranties or mere representations. The policy itself recites that it was issued "in consideration of the application for this policy, a copy of which is hereto attached and made a part of this contract," and the application referred to contains the following paragraph: "I declare on behalf of myself and of any person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that to the best of my knowledge and belief I am a proper subject for life insurance."

The distinction between warranties and mere representations constituting the inducement to the issuance of an insurance policy was clearly pointed out by Judge BATTLE in the opinion in *Providence Life Assurance Society v. Reutlinger,* 58 Ark. 528. It was there said: "Statements or agreements of the insured which are inserted or

referred to in a policy are not always warranties. Whether they be warranties or representations depends upon the language in which they are expressed, the apparent purpose of the insertion or reference, and sometimes upon the relation they bear to other parts of the policy or application. All reasonable doubts as to whether they be warranties or not should be resolved in favor of the assured.''

Measured by the rule thus announced, we are of the opinion that the statements of facts in the application should be treated as representations, and not as warranties, and that the untruthfulness of the statements do not operate as a forfeiture of the policy unless they were wilfully made by the applicant. This results from a consideration of the whole of the language of the policy. The language of the paragraph quoted above shows that it was not intended as a warranty, but that the statements were only made on belief, and were not warranted to be true.

Testimony was adduced by appellant tending to show that at the time the application was made by Jones he was afflicted with serious bladder trouble which finally caused his death, but there was other testimony in the case in conflict, which presented an issue as to the truthfulness or falsity of the statements in the application concerning the applicant's state of health. That question was submitted to the jury, and there was evidence sufficient to support the finding in plaintiff's favor. The death of the applicant occurred about two months after the delivery of the policy, but there was evidence of a substantial nature tending to show that the death resulted from malarial trouble, which arose after the issuance of the policy. That testimony came from the physician who attended Jones in his last illness, and the witness testified that malaria was the cause of Jones' death, and that he found no evidence of any other ailment. The trial court treated the statements in the application as representations, and not warranties and properly submitted to the jury for determination the issues whether or not the an-

swers were untrue, and if so, whether they were known to be untrue by the applicant himself. It is unnecessary to set out the instructions in the case for they are very numerous. The defendant requested the court to give twenty-six separate instructions, eight of which the court gave, and the others were refused. We will not undertake to discuss these instructions in detail.

Another question in the case was whether or not the policy was delivered to Jones while in good health, so as to meet the requirement of the stipulation in the application, which reads as follows: "That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health, and that, unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application."

The solution of this question turns also upon the good faith and apparent state of health of the insured at the time of the delivery and acceptance of the policy. The stipulation does not constitute a warranty of good health at the time of the delivery of the policy, but only amounts to a stipulation for a delivery while the insured is in apparent good health, and free from such diseases as would seriously affect the risk. That issue was also fully and completely submitted to the jury upon appropriate instructions.

(2) One of the most serious questions in the case concerns the alleged misstatement by the insured concerning his age. The policy contains a stipulation on that subject in the following language:

"4. AGE.—If the age of the insured has been misstated the amount payable hereunder shall be such as the premium paid would have purchased at the correct age, provided the age at the time insured is not over sixty years."

The age of the insured was stated in the application to be fifty-three years, but there is testimony tending to show that he was fifty-nine years of age at that time.

There is a conflict in the testimony on the subject, and the evidence warrants a finding either way as to the age of the insured, that is to say, the jury might have found that he was fifty-three years of age as stated in the application, or that he was fifty-nine years of age. The court gave an instruction at the request of the defendant telling the jury that if there was a misstatement of his age by the insured, such misstatement, if wilfully made, would avoid the policy and there could be no recovery. There was evidence sufficient to warrant a finding that even if there was a misstatement of the age, it was not wilfully made, and we must treat that question as settled by the verdict of the jury.

There remains, however, the question of the effect, under the terms of the policy, of an innocent misstatement by the insured concerning his age. The policy in the case is a limited payment one, that is to say it was issued on the plan called twenty-payment life, and the defendant introduced testimony showing that the age limit under that form of policy was fifty-five years, no policy being issued by the company to persons over that age. The court refused to permit the defendant to introduce in evidence a rate book showing that there was no rate of premiums on policies of that kind to persons over the above specified age limit, and the ruling of the court is assigned as error, but we think there was no prejudice in that ruling, for there was other testimony showing that there were no provisions for or rates on policies on persons over the age of fifty-five years, and we must treat that as undisputed. We are, therefore, confronted with the question whether under the contract there can be a recovery on the policy issued to Jones under a misstatement of his age where his age exceeded the above specified limit. The contention of the defendant is that if there was a misstatement of age, and the age of the applicant exceeded the maximum limit on such policies, there can be no recovery for the reason that the premium paid by Jones would not have purchased insurance of that kind in any sum, according to his correct age. On the other

hand, it is contended by counsel for the plaintiff that a recovery of the full amount of the policy was properly allowed notwithstanding the misstatement of age for the reason that the company did not show that a policy for a smaller sum was purchasable according to the limited payment plan.

(3-4)    Our conclusion is that the contention of the plaintiff is correct, and that he was entitled to recover the full amount of the policy.    We are, of course, dealing merely with an innocent misstatement of age, for it was settled by the verdict of the jury upon sufficient evidence and proper instructions that the misstatement was not wilfully made by the insured.    The language of the policy is that selected by the defendant company, and wherever found to be ambiguous to any extent the doubt will be resolved against the company and in favor of the policy holder.    The insurer sought to treat this subject of misstatement of age separately in a complete clause defining liability under those circumstances.    The policy was written for a certain sum, and the effect of this clause was to provide for a lessening of the amount, provided the age of the insured was not over sixty years, and it, therefore, devolved upon the company, in order to obtain any advantage under this clause, to show that there was a purchasable policy according to the plan adopted at the true age of the insured.    In other words, according to the terms of the policy there was liability for the amount named in the face of the policy unless it could be lessened so as to be reduced to such an amount of insurance as the premium paid "would have purchased at the correct age," and unless that premium would have purchased a policy for a less sum, the liability for the full amount continued.    Such, we think, is the fair and just interpretation of the language used, for there is no indication of an intention on the part of the company to provide for the payment of a premium and give nothing at all in return merely because there was an innocent misstatement of the age of the insured.    Any other construction of the language of the policy would nullify this provision concern-

ing innocent misstatements of age where the true age of the insured exceeded the limit beyond which the company declined to write policies and instead of giving the insured a policy for such a sum as the premium would have purchased at the correct age, as clearly contemplated by the policy, it would result in giving him nothing at all.

Our conclusion, therefore, is that the trial court properly interpreted the contract, and that the judgment for the full amount of the policy was correct.

(5) Error of the court is assigned in refusing to permit defendant to prove by two witnesses certain declarations of Jones concerning the state of his health. The record fails to show that there were any exceptions saved to the court's ruling with respect to the testimony of one of the witnesses and also fails to show what the answers of the witnesses would have been to the excluded questions. Therefore, there is nothing before us for review. The other witness was the wife of Jones, and defendant sought to prove statements made by Jones to his wife concerning the state of his health after the issuance of the policy. We entertain no doubt of the correctness of the ruling of the court in excluding that testimony. Pretermitting a decision on the ground urged by counsel for plaintiff that the evidence ought to have been excluded because of the relationship between the witness and the insured, we hold that it was not competent to prove by any witness admissions of the insured concerning the state of his health, as against the holder of the policy. The policy constituted a contract between the company and the beneficiary either under assignment or under the original designation in the policy itself, and it was not competent to prove, as against the interest of the beneficiary, the declarations of the persons whose life was insured under the policy. *Washington Life Ins. Co. v. Haney,* 10 Kan. 525; *Rawls* v. *American Life Ins. Co.,* 36 Barb. 357; *Fraternal Mutual Life Ins. Co.* v. *Applegate,* 7 Ohio St. 292; *Harley, Admr.,* v. *Heist,* 86 Ind. 196.

A few cases may be found where admissions made by the insured during the pendency of the application

were allowed to be proved on the ground that they constituted a part of the *res gestae,* but the authorities are unanimous, so far as they go, in holding that after the issuance of the policy, and especially after the assignment to another person, evidence of the declarations of the insured is not competent. Mr. Justice Brewer, speaking for the Supreme Court of Kansas on this subject, in the case above cited, said: ''Can the declarations of a party, whose life is insured for the benefit of another, made long after the application and the contract, be received in evidence against the assured to impeach the truthfulness of the application? The contract is between the assured and the insurer. The parties are the same whether that which is insured is a human life or a building. There is this difference, that the life being active can by its conduct affect the contract even so far as to annul it, while the building being inanimate and passive has of itself no such power. But, aside from this, the rights and liabilities of the parties to the contract are the same. The party insured is not a party to the record, and therefore his declarations are not admissible on that ground. She is not party in interest, as the whole benefit and interest inures to the assured. She is not his agent, and authorized to speak for him. Nor does she come within any other rule by which her declarations can be received against him.''

The other assignments of error are not deemed of sufficient importance to discuss. The record is found to be free from error, and the judgment is, therefore, affirmed.